(No. 4347—

DOUGLAS E. DREIER AND RUTH DREIER, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 5, 1951.*

RUDDY AND BROWN, Attorneys for Claimants.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

This claim arises out of an accident, which occurred on August 31, 1949, while claimants were riding in an automobile over U.S. Highway No. 34.

Claimant, Douglas E. Dreier, in company with his wife, Ruth Dreier, and their two minor sons, left their home in Aurora, Illinois around 11:00 A.M. to go to Denver, Colorado on vacation. Around 1:30 P.M., while driving west on said route, about one mile from Mendota, Illinois, a large limb from a tree fell on their car, and claimants sustained serious personal injuries and damages to their car. The limb was 30 to 35 feet long, and around 18 inches in diameter. It was raining, and a strong wind was in progress.

At the hearing, there was a definite conflict in the testimony between claimants' and respondent's witnesses as to the condition of the tree prior to the accident. John W. Humphrey, former highway section man, testified that there had been several storms in the area over a period of years, and that this tree had been in a dangerous condition for several years. He stated he had complained to the District office relative to same, but nothing was ever done to correct the situation. Clarence Scheidenhelm testified that he lived on the south side of the road just west of the tree in question, and that he had noticed a split or crack in the limb for two years preceding the accident. On the

day in question he was working approximately half a mile from the scene of the accident, and that there was a strong wind from the southwest for a period of a few minutes, but that there was no damage done to the corn, and that the only damage he noticed was that to the limb of the tree in question. His wife, Ethel Scheidenhelm, testified that just prior to the accident, when it looked as though a storm was blowing up, she was out in the yard bringing in the children's toys, and that the wind blew very hard for approximately a minute; that she did not see the accident occur, but saw the car shortly thereafter. She knew nothing about the condition of the tree, but had heard her husband remark about it on various occasions. The respondent's witnesses, Edward Gutson, supervisor, and Howard Harvey, landscape foreman, all testified that they were familiar with the area and the tree in question; that there was nothing wrong with the tree or limb prior to the accident, and that, upon inspecting the tree after the accident, it did not show an old break.

The Departmental Report showed that the tree was within the limits of the right-of-way, and, therefore, under the control of the State. There is no contention that the area wherein the tree was located was used as a park, so as to limit the liability of the State.

It, therefore, becomes important to determine the condition of the tree or the limb in question, and, whether it was in a dangerous condition, and whether or not the State had notice, actual or constructive, as to such condition, or performed its duty as to care of the trees, so as to avoid accidents caused by the falling of a limb.

The rule as applied to municipalities is again applicable to the facts in this case. In the case of *Renle*

vs. *City of Chicago*, 268 Ill. App. 266, the court, on page 270, held:

"In the event any of such trees become a menace to pedestrians, by reason of becoming rotten or decayed, the city had the power to remove the same, and was, moreover, under a duty and obligation so to do, if the circumstances warranted it. The duty to maintain sidewalks in a reasonably safe and proper condition applies not only to the sidewalks, but as well to the trees located on the street, and this rule is recognized not only in this State but generally wherever cities are charged with the control of its streets and highways. (*City of Mt. Carmel* vs. *Shaw*, 155 Ill. 37; *City of Indianapolis* vs. *Slider*, 56 Ind. App. 230; *Lundy* vs. *City of Sedalia*, 162 Mo. App. 218.)"

While the evidence is conflicting, a disinterested witness testified that there was a crack in the limb for two years. This witness, Clarence Scheidenhelm, lived right at the location of the tree, and had observed it every day. The position of the tree, and the enormous size of the limb overhanging the highway warranted a duty on the State to remove the same, if it were defective. That the State had knowledge is in conflict; that it had constructive knowledge seems borne out by the evidence, and required the State to exercise a duty to remove this dangerous obstacle; and, from this record, its failure to do so constituted negligence. There was no question raised as to any contributory negligence on the part of the claimants.

Claimant, Douglas E. Dreier, was pinned in the car. He was removed and taken to Mendota, and later to the hospital in Aurora, Illinois. His injuries were diagnosed as cerebral concussion, multiple abrasions and contusions of the face, hands, arms, anterior chest wall and abdomen. He was hospitalized for a period of eight days, and then remained at home in bed for another two weeks. Claimant was chief engineer for the Walker Process Equipment, Incorporated, of which he was also one of the owners. He was off work from the date of his injuries until December 1, 1949. At

that time he returned and resumed part of his duties, and on February 1, 1950 he reported for full duty. His salary in the Company was $500.00 per month, and he was paid same by the Company during his period of disability. After his discharge from the hospital he had a rather marked degree of nervousness, inability to concentrate and read, and considerable trouble with his eyes, which had been bad for a period of years.

Claimant, Ruth Dreier, was riding on the right side of the back seat. At the time of the accident she was feeding the baby; and, when the accident occurred, she was thrown into the back of the front seat. As a result, she suffered a cut on the left knee, a broken toe on the right foot, broken nose, and numerous face and body bruises. At the time of the hearing she had a small scar on her face. She received first aid, attention to her nose and other injuries, but was not hospitalized. Her doctor bills amounted to $15.00. Claimant was a housewife, and after the accident it was necessary to send the laundry out for a period of several months at a cost of approximately $20.00 per month, and it was also necessary to secure additional help in the house.

Claimant, Douglas E. Dreier, sustained rather serious and painful injuries, but according to his doctor he recovered, and the only remaining physical disability was his increased nervousness.

Claimant, Ruth Dreier, sustained painful injuries to her face and knees, as well as a fracture of her big toe, but apparently has no permanent disability.

From the evidence in the record, we make the following award:

To claimant, Douglas E. Dreier, the sum of $2,000.00.
To claimant, Ruth Dreier, the sum of $500.00.